## L. B. BATES ET AL v. THOS. JAMES' HEIRS.

Contract for Exchange of Lands—Breach of Covenant—Misdescription in Deed Corrected.

Under a contract for exchange of lands, a deed made subsequent thereto in which the property is misdescribed will be corrected by a chancery proceeding. A mere misdescription in a deed is not a breach of warranty nor grounds for a recission of contract between the parties.

APPEAL FROM LOUISVILLE CHANCERY COURT.

May 26, 1868.

OPINION OF THE COURT BY JUDGE WILLIAMS:

December 15, 1859, Bates and decedent James exchanged lands, Bates selling James 13 acres near Louisville, Kentucky, for $13,000, ten thousand dollars of which was paid in lands in Issaquena county, Mississippi, and three time payments of $1,000 each to be made in money, for which notes were executed, and James of that date executed a deed for the Mississippi lands.

January 23, 1860, Bates executed to James his deed for the Kentucky land, reciting the consideration of 4550 acres of land in Issaqueena county, Mississippi, conveyed by deed of 15th of previous December, at $10,000, and for his three notes of $1,000 each, due April 15, 1860, 1861 and 1862.

This land was laid off and designated on a map by quarters, sections and fractions, townships, ranges, &c., and Bates selected and had designated, out of a much larger quantity, the lands to be conveyed to him. James was then living in Memphis, Ten-

nessee, and Loving, the agent who had mainly been instrumental in making the trade for James, prepared the deed at Louisville, Kentucky, for him to execute to Bates, but made a misdescription of the township in which some of these lands lay.

This is most apparent from the evidence of both Leany and Bates, as well as other witnesses.

Bates having sold, as he says, his interest without recourse to John Bates his depositions are in—in which he says he went to look at these lands some four or five months after he purchased them and found that some of the lands as described in the deeds lay six miles from where represented, and that James had no title to the lands described, in the deed.

James in his answer says he was at all times willing to correct the mistake by proper deed, that it was a mere misdescription made by the draftsman Loving and Loving establishes this as does virtually the evidence of Bates, his conduct and the circumstances developed. For notwithstanding the discovery of this error was made within a few months after the trade, and most probably before the first note of James to him fell due, still Bates continued to collect the unpaid purchase money, the last note for which was not due until April 15, 1862.

February 16, 1863, ten months after the last payment fell due, and when it had been collected, Bates attached James property alleging an indebtedness of ten thousand dollars on this warranty. James being a non-resident was permitted to file his answer and open the first judgment, under the provisions of the Code.

Upon filing his answer and making the issues the foregoing facts appeared when the court rescinded the contract, adjudged against Bates the three thousand dollars purchase price paid by James, with $1,308 interest, and deducting therefrom $2,684, for the rents and interest, leaving a balance against Bates of $1,624. From which Bates appealed and cross errors in rescinding the contract are taken.

It is very apparent that though there was a mere misdescription of the Mississippi lands in James deed to Bates, yet the latter was not so much dissatisfied with it as to either bring suit to have it corrected or for a rescission of the contract, though this was discovered within a few months, until he had collected all the purchase money, and the circumstances of the late Civil War had greatly reduced the price and value of the land. That James had

a good title to the land actually sold, but misdescribed in the deed, is also apparent. That Bates had not gotten the deed corrected was most probably because of his own neglect the circumstances strongly indicate and are not sufficiently rebutted by the evidence of Hyanes.

And that Bates has really a good title to the land actually purchased by him, and which will be entirely perfected by a reformation of the deed, is reasonably certain.

When, therefore, the title can be so easily perfected, and when owing to the altered condition of the country in which these lands lay it would be so unjust to rescind the contract, especially in view of Bates' conduct in the whole affair, we cannot concur with the chancellor in rescinding this contract, but the judgment must be reversed on the cross appeal with directions to the court below on the return of the cause to reform and correct the deed of James to Bates so as to specify the lands actually sold and to dismiss the plaintiff's cause of action as to all other relief.

This view of the case sets aside all necessity of investigating the correctness of the commissioner's report as to rents and profits and damages, which the court confirmed, as such investigation will be wholly irrevelevent on the return of the cause.

Wherefore, the judgment is reversed on the cross appeal, but a reversal on the original appeal is refused.

*Brown & Lindsey, for appellants.*

*Bunch, for appellees.*